Cushing, J.
The plaintiff in error filed a petition in the Insolvency Court of Hamilton County seeking to appropriate an easement over and across the streets and public landing, beginning at the east side of Broadway and extending west to the west line of Main street in the city of Cincinnati, for the purpose of erecting thereon an elevated railroad; the said railroad to extend from the company’s main track at its Newport and Cincinnati bridge to a tract of land owned by it, lying' west of Vine and south of Water streets in Cincinnati. The land in question is to be used by the railroad company for yard and freight depot purposes.
The court below dismissed the petition of the railroad company, and it now prosecutes error to reverse the finding of that court on the preliminary questions there presented.
In the court below, the railroad company did not offer any evidence tending to establish its inability to agree with the city of Cincinnati as to the value of the easement it sought to appropriate, nor did it offer any evidence of the necessity for the appropriation.
Counsel for the railroad company contend thát the city of Cincinnati has no power te agree with the railroad company as to the amount of money the company should pay for the easement it seeks to appropriate. This contention is based on a decision of the Supreme Court of Ohio, which will be considered hereafter.
Counsel for the railroad company also contend that it was not necessary to offer evidence under the fourth division of Section 6420, Revised Statutes, and assigned as a reason therefor that the Legislature of Ohio vested in the directors of the railroad company the power to determine the question of said necessity, that their determination is final and the court has no power to consider that question.
Counsel for the city of Cincinnati contend that the ordinance of the city council is invalid-: first, because it contains two distinct subjects of legislation; and second, in that it does not specify any terms and conditions for the occupancy of the city’s property and' 'that it includes property not dedicated to the city for a public landing.
*67 Counsel for interested property owners argue that Section 3283a is unconstitutional.
In determining the questions here presented, it will be necessary to consider the case of The Louisville & Nashville Railroad Company v. City of Cincinnati, 76 O. S., 481; the case of City of Cincinnati v. The Louisville & Nashville Railroad Company, 9 N.P.(N.S.), 433; and Sections 3283, 3283d, 6415 and 6420, Revised Statutes.
The source of all power of eminent domain is so well understood in this country that it would not be necessary to re-state it here if it were not for the fact that counsel seem to differ as to the extent of the power vested in this corporation by the Legislature. The state has a right in and a control over all highways, streets, alleys, avenues, public grounds, landings and wharves of whatever character or description, superior to that of any subdivision of such state, such as counties, townships and municipalities.
“Public streets, squares, landings and grounds are * * * under the absolute control of the legislative power of the state." Louisville & Nashville Railroad v. City of Cincinnati, 76 O. S., 481.
The power to appropriate property for public use under the law of eminent domain is in the state. That power is inherent in the state. The state may vest the same power in municipalities, in corporations public or private, and in some instances the same power may be delegated to private citizens. Such municipalities, corporations and citizens have only such power to appropriate property under the law of eminent domain as is delegated to them by the state. This delegation'of power must be either in express terms or by necessary implication. .
The Legislature, by duly enacted laws, has delegated to railroad companies, under eminent domain, the power to appropriate three classes of property: first, private property; second, such public property as falls within the class specified in Section 3283, Revised Statutes; a*nd third, such other public property as is specified in Section 3283a, Revised Statutes.
■ Section 3283. “ If it be necessary, in the location of any part of a railroad owned or operated by a domestic or foreign cor *68 poration to occupy with a surface or elevated track, with the necessary supports therefor, any public road, street, alley, way or ground of any kind, or any part thereof, the municipal or other corporation or public officers or authorities, owning or having charge thereof, and the company, may agree upon the manner, terms and conditions upon which the same may be used or occupied, and in the event of the occupancy of any such ground with an elevated track such agreement shall specify the number, character and location of all supports for such track, any part of which shall be upon such public ground, and the vertical and longitudinal clearances between such supports, and if the parties be unable to agree théreon, and it be necessary in the judgment of the directors of such company, to use or occupy such road, street, alley, way or ground, or any part thereof, for surface tracks, or for crossing with an elevated structure when no piers, supports, or obstructions are to be placed therein; such company may appropriate so much of the same as may be necessary for the purposes of its road in the manner and upon the same terms as is provided for the appropriation of the property of individuals; but every company which lays a track upon or over any such street, alley, road or ground, or part thereof, shall be responsible for injuries done thereby to private or -public property lying upon or near to such ground, which may be recovered by civil action brought by the owner before the proper court, at any time within two years from the completion of such track. Provided, that nothing in this act contained shall be construed as authorizing the grant of the right to occupy any public street, avenue or alley, longitudinally by an elevated track, except in so far as the same may be necessary to accommodate a curve in the line of the elevated track, and in that case no supports shall be placed in the roadway of the street, avenue or alley, between the curb lines thereof, and in no case shall such longitudinal occupancy of the street, avenue, or alley, exceed three hundred (300) feet in length.”
Section 3283a. “If it be necessary, in the judgment of the board of directors of any domestic or foreign corporation owning or operating a railroad wholly or partly within the state of Ohio, to use and occupy for an elevated track any portion of any public ground lying within the limits of any municipality and dedicated to the public for use as a public ground, common, landing or wharf, or for any other public purpose, excepting all streets, avenues, alley, or public road, such company may appropriate an easement over so much of such ground as may be necessary for such purpose, including the right to maintain the necessary piers and supports for said elevated track; but such *69 appropriation shall be limited to such an easement as is necessary for the construction, maintenance and uses of such elevated track, in accordance with the plans hereinafter provided for. Proceedings for such appropriation shall be conducted in the manner provided in Title II, Chapter 8, part 3, of the Revised Statutes, so far as .the same may be applicable thereto, but before any appropriation may be made hereunder there must be submitted to the council of the municipality general plans of the proposed structure showing the manner,' character and location of all supports, any part of which will be upon such public ground, common, landing or wharf, and showing the vertical and longitudinal clearances between the supports; and no right to appropriate shall accrue to the railroad company until after said company and the council shall have agreed upon the manner, terms and conditions upon which the property may be used or occupied and the plans submitted shall have been approved by ordinance duly passed by a two-thirds vote of council, but that such appropriation shall not be restrictive of the control by the public officers or authorities over such public ground, common, landing or wharf, subject to the continued maintenance and use of such elevated track upon the terms and conditions agreed upon, and such ordinance shall be read on three separate days and the rules requiring such reading shall not be suspended.”
By enacting these two sections of the statutes, the Legislature has recognized two distinct classes of public property and has provided for their appropriatión by railroad companies under the law of eminent domain. So far as this case is concerned, we have only to do with streets under Section 3283, and public landings, wharves, etc., under Section 3283a. The city council may grant to railroad companies the right to cross its streets as provided in Section 3283.
Section 3283a, Revised Statutes, limits the appropriation of property under it to public landings, wharves, etc. The Legislature has vested in railroad companies as therein provided, the right to cross such public grounds. Such power is inherent in the state, and if there could be a doubt as to its right to delegate that power to railroad companies, that doubt has been judicially determined by the Supreme Court of the state in the following language:
"Sections 3283 and 3283a are not unconstitutional in that they (as claimed by plaintiffs) enlarge the scope of the right of emi *70 nent domain as to this public landing beyond that existing in the year 1789 when the public landing was dedicated.” Cincinnati v. L. & N. R. R. Co., 9 N.P.(N.S.), 433.
This case was affirmed by the Supreme Court of Ohio, so the constitutionality of the act is not for consideration by this court.
Considerable confusion has arisen, and in fact it seems that this litigation is based on a misconception of the finding of the Supreme Court in the case of The Louisville & Nashville Railroad v. City of Cincinnati, supra. There can be no question but that the court in determining that case gave to the language used its plain, ordinary meaning and that the court intended what it said and nothing more. Counsel for the railroad company in giving their views of the decision in question, have this to say:
“As to the interest of the municipality in the property, the Supreme Court has. decided in 76 O. S., 481, that the municipality was without power to alienate.” Brief of Kinkead & Rogers, page 31.
The court below was evidently misled by this argument of counsel, as was the city council, else the court below would not have decided as it did and council could not have passed the ordinance now under consideration.
A careful review of that case fails to disclose any such determination by the Supreme Court of Ohio, as is contended by counsel for the railroad company. What the court did determine was that the public landing of the city of Cincinnati was not public grounds within the provisions of Section 3283,- Revised Statutes; that said landing had been dedicated to a public use and that it could not be diverted from that use and subjected to another public use except under and in accordance with the law of eminent domain,- and as the state had not extended to railroad companies the right to appropriate the class of public property in question the act of the railroad company and the city council was void. The court in that ease was not passing on the power of the city of Cincinnati under Section 3283a. It does not follow that because the city council had no authority to act under Section 3283 that, it has no power, to act under- Sec *71 tion 3283a. The section last named was enacted by the Legislar tnre after the decision of the Supreme Court in 76 O. S.
Before proceeding to a consideration of the sections of the statutes in question, it should be recalled that the record in this case shows that the legal title to the property, the public landing, is in the city of Cincinnati; that it holds the same in trust for the citizens of the city, and that in ease the property is not used for the purposes for which it was dedicated, it reverts to the heirs of the donor. The facts here stated give the city control over the property in question and made necessary some provision in the law for bringing into court, and binding, the unknown heirs of the donor of the property to the city of Cincinnati.
There are two provisions of Section 3283a in controversy in this ease. The first is the language following:
“Proceedings for such appropriation shall be conducted in the manner provided in Title II, Chapter 8, part 3, of the Revised Statutes, so far as the same may be applicable thereto.”
This section then by reference and adoption, re-enacts so much of Title II, Chapter 8, part 3, Revised Statutes, as may be applicable to the appropriation of this property. Sections 6415 and 6420, Revised Statutes, are a part of and within the chapter to which reference is made. They read as follows: '
Section 6415. “Appropriations can only be made when the corporation is unable to agree with the owner, or his guardian or trustee, as to the compensation to be paid for the property, or easement or interest therein, sought to be appropriated, or when the owner is incapable of contracting in person or by agent, and has no guardian or trustee, or is unknown, or his residence is beyond the state, or unknown.”
'Section 6420. “On the day named in any summons first served, or publication first completed, the probate judge shall hear and determine the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owner, and the necessity for the appropriation. Upon these questions the burden of proof shall be upon the corporation, and any interested person shall be heard.”
The record in this case further discloses that the railroad company did in part proceed under both of the above named sec *72 tions of the statutes. Its action was filed in the probate court. It served the unknown heirs of the donor of the property in question by publication as therein provided. It then proceeded under Section 6420 and offered evidence to the satisfaction of the court below that it was an existing corporation and had a right to make the appropriation.
"Was it the intention of the Legislature to adopt only parts of the sections referred to? It is the law that where one statute adopts the particular provisions of another by a specific descriptive reference to the statute or provision adopted, the effect is the same as though the statute or the provisions adopted had been incorporated bodily into the adopted statute. One part of a statute can not be allowed to defeat another, if by any reasonable construction the two can be made to stand together. Southerland Statutory Construction, Section 405.
Therefore, Section 3283a stands as though Sections 6415 and 6420, Revised Statutes, had been rewritten therein, and it is the duty of the court to so construe these sections of the statutes, if it can be done, as to give each its full force and effect.
The word here to be construed is “proceeding, or procedure.” Does this word limit the operation of Sections 6415 and 6420, Revised Statutes, so that but part thereof are applicable to this act.
“The word procedure both in its popular use and technical application has a definite meaning which we can not alter or enlarge. It means in all eases, the performance of the act as wholly distinct from any consideration of the abstract right. A procedure in a civil action is an act necessary to be done in order to obtain a given end. It is a prescribed mode of action to carry into effect a legal right, and so far from involving any consideration or determination of the right, presupposes its existence. The procedure follows the right.” Ex parte McGee, 33 Ore., 164.
The legal right, the right to appropriate this class of property, is expressly granted by Section 3283a. The procedure provided by Section 6420, Revised Statutes, is necessary to give effect to the legal right prescribed by the granting statute.
Section 3283a is a grant of additional power to railroad companies. It confers a legal right that did not exist prior to its enactment. This section not only confers the legal right to ap *73 propriate this class of property, blit it specifically provides what procedure is necessary in ease it is appropriated. That is, it specifies the forum, limiting the jurisdiction to the probate court, provides a method of bringing necessary parties into court, and makes a determination of certain questions, conditions precedent to the company’s right to make the appropriation. In other words, the exercise of the right is predicated upon a compliance at least with some of the provisions of Section 6420. Does it mean all or only a part of same 1
But that is not all. Section 3283a further provides that before an appropriation may be made, there must ,be submitted to council of the municipality plans of the proposed structure, showing the manner, character and location of the supports, etc.; and no right to appropriate shall accrue until after said company and the council shall have agreed upon the manner, terms and conditions, etc'.
If the rule for construing statutes is that one part of the statutes can not be allowed to defeat another, if by any reasonable construction the two may be made to stand together, the conclusion is that Section 3283a, Revised Statutes, imposes upon railroad companies seeking to appropriate this class of public property, additional burdens to those provided in Section 6420. It must comply with all the provisions of Section 6420, and it must comply with the provisions of the statute granting the right to make the appropriation.- This must be the true construction of the statute in question, in view of the fact that the property sought to be appropriated is already devoted to a public use. It does not seem reasonable that the Legislature intended to require of the ex-appropriator in this class of property, fewer restrictions than it did in appropriating private property and other classes of public property.
The question of the validity of the ordinance of the city council was argued at length on both sides, and if any confusion has arisen in the case, it is due to the language of Section 3283a. It is:
“But before any appropriation may be made hereunder there must be submitted to the council of the municipality general plans of the proposed construction showing the manner, character- and location of all supports, any part of which will be upon *74 such public grounds, landing, or wharf and showing the vertical and longitudinal clearance between the supports; and no right to appropriate shall accrue to the railroad company until after said company and the council shall have agreed upon the manner, terms and conditions,” etc.
This language follows the words adopting and incorporating the sections of the statute above referred to. It is part of the same sentence. The words are connected to the main part of the sentence by the conjunction "but.” That word connects phrases and clauses of unequal rank. All that follows is subordinate to and dependent upon the principal part of the sentence.
This subordinate clause contains two provisions of equal rank. Both the punctuation and the words used, clearly indicate this to be the intention of the Legislature. The filing of the plans and their approval by council showing the proposed structure is one requirement imposed by the Legislature, and an agreement by council and the railroad company upon manner, terms and conditions upon which the property shall be used and’occupied is another. The language in connection with the words manner, terms and conditions is, "no right to appropriate shall accrue,” etc.
Webster defines the word accrue, as to come to by way of increase; to arise or spring as a growth or result. Accrue as here used means that in addition to other requirements no right to appropriate shall be derived from any or all of the other provisions of the law until after the manner, terms and conditions upon which the property shall be used and occupied shall have been agreed upon, etc.
It is the law that when a discretion is vested in any officer, board or body, and that officer, board or. body exercises the discretion so vested, that that act is final and a court can not substitute its judgment for the judgment of the body in which the power is so vested, as in this ease in the council, for the discretion of the council. But the council must act and come to an agreement with the company as to the manner, terms and conditions of its proposed occupancy before the. company acquire or be possessed of the right to appropriate. In the case at bar, the ordinance has to do with that part of the statute relating to the structure and does not provide for any terms and conditions upon which the *75 company may occupy as the statute requires, before the company can appropriate the property, therefore council has not exercised the discretion vested in it.
“Manner in contemplation of the statute, means method or mode, the way the tracks are laid. Terms, the boundary, limit, the extent of the grant. Conditions means stipulations, precedent, inducement to the grant.” C., C., C. & St L. R. R. v. City of Cincinnati, 6 Pro. Rep., 278.
If the case cited correctly defines the words used in this statute, the ordinance is void, as there is no mention of any terms in connection with, or limit to the grant, neither does it provide any condition precedent, limitation or stipulations in connection with the grant.
The language of the statute is very broad. It vests in council a discretion, and at the same time makes it mandatory on council, as a condition precedent to its authority to do certain things, i. e., there must be an agreement between council and the railroad company.
The law contemplates that the city and its citizens have a valuable interest in the public landing. The city holds the title to the property, and Section 3283a, Revised Statutes, authorizes a transfer of that title, the kind and amount of consideration that will compensate the city for the use of the land by the railroad company is left exclusively to the council. Council may demand a gross sum of money, or an annual rental or both. It may also require that, on the happening of any contingency named in the contract, the railroad company raise, lower, shift or entirely remove its tracks from the public landing. The city may make any demand as a condition or consideration of the grant. The railroad company is under no obligation to agree to the city’s demands. The only penalty imposed on a failure to agree is that the railroad company can neither occupy'nor condemn under the law of eminent domain, the right to use the property until after it shall have agreed with the city on such terms and conditions as the city may impose.
It is also claimed that the ordinance is invalid in that it contains two distinct subjects of legislation. Referring again to the record, it is not disputed that the eastern boundary of the *76 public landing is sixty-seven feet west of the eastern boundary of Broadway. Broadway therefore extends to the river and that part of said street south of Water street is sixty-seven feet wide.
Any right this railroad has to cross Broadway is given it by Section 3283, Revised Statutes, while its right to cross the pub-die landing is conferred by Section 3283a. Council has only such power to legislate as is conferred on it by the legislative branch of the state. It has provided that:
“No by-law or ordinance shall contain more than one subject, which shall be clearly expressed in the title." Section 1694, Revised Statutes.
The subjects concerning which council has undertaken to degístate, in the ordinance in question, are the streets and the public landing of the city; they and not the railroad are' controlled by the ordinance. Therefore, as the ordinance contains provisions relating to property other than the public landing, it contains more than one subject of legislation, and is void.
If the views here expressed correctly state the law, it follows that the judgment of the court below must be affirmed.
There is, however, one matter that was not argued by, but to which counsel’s attention is directed. It was conceded at the trial of this case that property already devoted to a public use can not be taken for, nor subjected to, another public use, unless the latter is a superior or a more important public use and does not destroy or cripple or seriously interfere with the former use. The language of the text-writers on the subject is:
“The proposed taking shall not destroy, or cripple, or seriously interfere with the prior public use."
The record in this ease discloses that the railroad seeks to use the easement over this property to reach, and as a part of, its terminal for yard and freight depot purposes. The public landing is the only terminal that the city has or can have in connection with the river. So both uses of the land in question may be said to be for terminal purposes. The question then is, does the rule of law applicable to navigable streams and railroads apply to terminals for such navigable streams and railroads.
*77 The Supreme Court of Ohio has determined the question as between navigable streams and railroads. The controversy in the case referred to was between the Miami & Erie canal and a railroad. The court says:
“They show further, that as between two public uses, that for purposes of navigation is paramount over public uses for railroads, even as against the right to cross.” State, ex rel, etc., v. Ry. Co., 37 O. S., 173.
The question of terminals is becoming most important both to transportation companies and towns and cities. Without adequate terminal facilities, means of transportation do not have the same importance as with them.
The Supreme Court of the United States, of Ohio and other states, has passed on the question of wharves.
“A wharf is a necessary incident to transportation.” Ironton R. R. v. City of Ironton, 19 O. S., 299, 305.
“Navigable streams would be of little value without wharves, if they had no place where the vessels which they floated could land. Wharves and piers are as necessary almost to the successful use of the stream in navigation as the vessels themselves,' and are to be considered as an important part of the instrumentality of this branch of commerce.” Atlee v. Packet Co., 21 Wall., 389-393.
“Wharves, levies and landing places are essential to commerce by water no less than a navigable channel and a clear river." Parkersburg Transit Co. v. Parkersburg, 107 U. S., 701; Ferry Company v. Penn., 114 U. S., 205.
“It has been generally recognized by the courts that wharves are almost as essential to commerce as the water-ways themselves.” Cobb v. Lincoln Park, 202 Ill., 434.
If the law as declared by the courts in controversies between navigable streams and railroads is applied to their terminals, the railroad company would not be able to show that the use it seeks to make of the public landing in Cincinnati was superior to the use to which the public landing was dedicated. That question is not here determined.